IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BENJAMIN OWEN MARKS,

        Plaintiff,

v.

CAROLYN COLVIN, Commissioner,
Social Security Administration,

        Defendant.

Civil No. 3:15-cv-02137-MA

OPINION AND ORDER

MERRILL SCHNEIDER
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293

        Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97204

1 - OPINION AND ORDER -

ERIN F. HIGHLAND
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2500 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

MARSH, Judge.

Plaintiff, Benjamin Owen Marks, brings this action for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for supplemental social security ("SSI") under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the final decision of the Commissioner is AFFIRMED.

## PROCEDURAL BACKGROUND

On March 24, 2010, Plaintiff filed an application for SSI alleging disability beginning February 1, 2009, with a protective filing date of February 12, 2010. Tr. 305-308. Plaintiff alleged disability due to psoriatic arthritis, depression, bi-polar disorder, plantar fasciitis, and torn meniscus in the right knee. Tr. 332. Plaintiff's application was denied initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 133-166, 201-204.

On January 27, 2012, a hearing was held before Administrative Law Judge ("ALJ") Paul G. Robeck. Tr. 51-94. On February 10, 2012, the ALJ found Plaintiff not disabled within the meaning of the Act. Tr. 164-181.

Plaintiff filed a request for review by the Appeals Council, and on June 6, 2013, the Appeals Council remanded the case to the ALJ. Tr. 182-185, 242. On November 15, 2013, and on February

25, 2014, hearings were held before ALJ Robeck. Tr. 42-50, 95-132. On March 20, 2014, the ALJ issued a decision denying Plaintiff's application. Tr. 19-36. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on September 17, 2015. Tr. 1-6. Accordingly, the ALJ's March 20, 2014, decision became the final decision of the Commissioner.

## FACTUAL BACKGROUND

Born in 1961, Plaintiff was 47 years old on February 1, 2009, the alleged disability onset date. Tr. 328. Plaintiff has a high school diploma and several years of college. Tr. 55. Plaintiff has past relevant work as a social service aide. Tr. 35.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at step five to show that a significant number of jobs exist in the national economy that the claimant can perform. *Yuckert*, 482 U.S. at 141-142; *Tackett*, 180 F.3d at 1098.

At step one, the Commissioner determined that Plaintiff had not engaged in substantial gainful activity since February 12, 2010, the application date. Tr. 21.

At step two, the ALJ found Plaintiff suffered from the following severe impairments: arthritis of the bilateral hands; obesity; mild degenerative disc disease of the lumbar and thoracic spine; and mild degenerative joint disease of the right knee. Tr. 22. The ALJ noted that other symptoms and complaints appear in the medical treatment records periodically, but that there is nothing to show that they are more than transient or that they cause significant vocational limitations,

and any such impairments are not severe because no objective acceptable medical documentation supports such a finding. Tr. 22. The ALJ also found Plaintiff suffered from medically determinable mental impairments of depressive disorder, antisocial personality disorder, obsessive compulsive disorder, and history of intravenous methamphetamine use, but that considered singly and in combination, these impairments do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, and are therefore non-severe. Tr. 22.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. Tr. 27. The ALJ then found Plaintiff has the following residual functional capacity ("RFC"):

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: occasionally climb, balance, stoop, kneel, crouch, and crawl; no climbing of ladders, ropes, and scaffolds; and no more than frequent handling and fingering.

Tr. 28.

At step four, the ALJ concluded that Plaintiff retained the ability to perform the requirements of his past relevant work as a social service aide. Tr. 35. Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Tr. 25.

## SUMMARY OF ISSUES

Plaintiff argues the ALJ erred in five respects: (1) in discrediting Plaintiff's testimony; (2) in discrediting the testimony of lay witness Teresa Mattingly; (3) in failing to adequately consider the medical opinions of treating physician Kenneth Scalapino, M.D., and examining physicians John Ellison, M.D., and Ronald D. Duvall, Ph.D.; (4) in improperly rejecting severe impairments at step two; and (5) in failing to conduct an adequate analysis at steps four and five.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153 1159 (2012) (internal quotations omitted); *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.     Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide

clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medications, and relevant character evidence. *Ghanim*, 763 F.3d at 1163. Not all of an ALJ's reasons for discrediting a claimant must be upheld, as long as substantial evidence supports the ALJ's determination. *Carmickle*, 533 F.3d at 1162.

In his decision, the ALJ cited several reasons for discounting Plaintiff's credibility: Plaintiff's daily activities showed fewer limitations than alleged; Plaintiff's performance of some work beyond his alleged onset date; Plaintiff's failure to appear for multiple medical appointments; Plaintiff's drug-seeking behavior; Plaintiff's criminal history involving crimes of dishonesty; Plaintiff's poor work history; and the routine and conservative nature of Plaintiff's treatment.

The ALJ provided specific, clear and convincing reasons, backed by substantial evidence, for discounting the severity of Plaintiff's symptoms. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). First, the ALJ noted that Plaintiff's daily living activities showed fewer limitations than alleged. Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. A claimant's daily activities may undermine his allegations if the claimant spends a substantial part of his day engaged in

activities that are transferrable to a work setting, or if the activities contradict his testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ cited the fact that Plaintiff was able to cook for himself and for his marijuana product sales, used the internet for hours at a time, cleaned, shopped, drove, gardened, and maintained his hygiene. Tr. 30. The ALJ further noted Plaintiff's school attendance and part-time work at a recovery house. Tr. 30. The ALJ reasonably concluded that Plaintiff's reported activities are inconsistent with his allegations of disabling levels of pain and inability to work, and reasonably discounted his testimony on this basis.

The ALJ also cited evidence that Plaintiff worked beyond his alleged onset date. Tr. 30. Specifically, Plaintiff testified that he made between $50 and $200 a week from baking goods for a medical marijuana bake sale, and there is evidence in the record that Plaintiff was working at a recovery house in 2013. Tr. 30. In August 2013, Plaintiff reported he had a day job, that his business was growing, and it was closer to turning a profit. Tr. 31. Moreover, in November 2013, Plaintiff reported he was running a business that supplied medical marijuana providers, that the business was going well, and that he had to travel frequently for work. Tr. 30.

Performance of job duties on a part-time basis, while not sufficient to establish work full time, can constitute a legitimate reason for discounting a claimant's assertion of disability. *See Bray v. Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding that ALJ properly discounted claimant's credibility when the claimant had worked and sought other work since claimant's disability onset date). This inconsistency is a clear and convincing reason for the ALJ to conclude Plaintiff was not wholly credible. *Mankin v. Commissioner of Social Sec. Admin.*, Case No. 6:14-cv-01249-MA, 2015 WL 4488339, at *5 (D. Or. July 22, 2015).

The ALJ also cited Plaintiff's opioid-seeking behavior. Tr. 31. As support for his rationale, the ALJ cited numerous instances in the record where Plaintiff became upset and lashed out at his physicians after they denied his requests for opiate pain medication. Tr. 31, 1600, 1860, 1864, 1894. An ALJ may discount a claimant's credibility based on drug-seeking behavior. *Edlund*, 253 F.3d at 1157.

The ALJ also found Plaintiff not entirely credible because Plaintiff failed to appear for multiple medical and mental health appointments. Tr. 31. A claimant's failure to assert a good reason for failing to seek or comply with treatment can adversely impact credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). A claimant's "failure to assert a good reason for not seeking treatment, 'or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Molina*, 674 F.3d at 1114.

Here, the ALJ cited a May 2013 treatment note where Plaintiff's treating physician agreed to continue with treatment for Plaintiff's rheumatoid arthritis despite several missed appointments, described as a pattern of "serial no-shows." Tr. 31, 1791. In June 2013, the same treating physician advised against a new pharmaceutical trial because he was unable to safely monitor Plaintiff due to Plaintiff's inconsistent follow-up. Tr. 31, 1706. The ALJ also cited Plaintiff's limitation in prescription refills in October 2013 as a result of recurrent missed appointments. Tr. 31.

The ALJ also appropriately found that Plaintiff's 47 felonies, which were primarily for crimes of dishonesty such as identity theft and property crimes, undermined his credibility.[1] Tr. 31-

---

[1] I note that the Social Security Administration recently "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy" to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p; Titles II and SVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14167 (Mar. 16, 2016) (superseding SSR 96-7p). However, the changes to Administration practice articulated in SSR 16-3p could not apply to the

8 - OPINION AND ORDER -

32. As noted, an ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007) (ALJ may consider a claimant's reputation for truthfulness, including any convictions for crimes involving dishonesty or moral turpitude).

The ALJ also appropriately considered Plaintiff's sporadic work history before the onset date of his disability as undermining his allegation that his impairments are causing his employment. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (noting that claimant "had an extremely poor work history and has shown little propensity to work in her lifetime, which negatively affected her credibility regarding her inability to work"); 20 C.F.R. § 416.929(c)(3) (providing that prior work history may be considered in assessing credibility). As the ALJ noted, Plaintiff did not earn any income between 1987 and 2001, and the income he did earn in other years was minimal. Tr. 32.

Finally, the ALJ reasonably found that Plaintiff's conservative course of treatment is inconsistent with his allegations of disabling impairments. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). The ALJ noted that Plaintiff received routine treatment for his ailments, and that the treatment appears to be controlling his symptoms. Tr. 32-33.

In short, the ALJ articulated specific, clear and convincing reasons for the adverse credibility determination that are backed by substantial evidence in the record as a whole. The ALJ did not err.

---

ALJ decision at issue before this court, because 42 U.S.C. § 405(g) does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 214-215 & n.3 (1988); *Garner v. Colvin*, 626 Fed.Appx. 699, 701 (9th Cir. 2015).

9 - OPINION AND ORDER -

## II. Lay Witness's Credibility

Plaintiff also contends the ALJ erred in discounting the credibility of a lay witness statement provided by his friend, Teresa Mattingly. Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). An ALJ must provide "germane" reasons for rejecting lay witness testimony. *Molina*, 674 F.3d at 1114.

Here, the ALJ satisfied that requirement for two reasons. First, where a third party witness testifies to the same limits alleged by the claimant, and the claimant's testimony is properly discounted, the reasons for discrediting the claimant's testimony also apply to the third party witness's testimony. *Molina*, 674 F.3d at 1122; *see also Valentine*, 574 F.3d at 694 (where ALJ has properly discounted claimant's credibility, failure to reassess third party witness statement as to same limitations not error). Here, Ms. Mattingly's description of Plaintiff's functional limitations largely reiterated Plaintiff's own description of his limitations, and the ALJ provided adequate reasons for discounting Plaintiff's credibility.

Second, any error in evaluating lay witness testimony is harmless if that testimony "is contradicted by more reliable medical evidence that the ALJ credited." *Molina*, 674 F.3d at 1118–19. In his thorough review of the medical record, the ALJ here both credited medical evidence that was inconsistent with Ms. Mattingly's statements, and provided sufficient reasons for concluding that the evidence upon which he relied was reliable.

**III.    Physicians' Opinions**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Ghanim*, 763 F.3d at 1161.

When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Thomas*, 278 F.3d at 957. In addition, a doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195.

**A.    Kenneth Scalapino, M.D.**

On November 2013, treating physician Kenneth Scalapino, M.D., completed a questionnaire and opined that due to symptoms from inflammatory arthritis, osteoarthritis, and calcific tendonitis, Plaintiff could walk less than one block at a time, could stand and/or walk no more than one hour total in an eight-hour day, and could never kneel, crouch, crawl, reach overhead, or perform fine manipulation. Tr. 2007-08. Dr. Scalapino further stated that Plaintiff's concentration and attention would be impaired most of the time over a 40-hour work week, and that Plaintiff would miss sixteen hours or more a month from even a simple and routine sedentary job because of his impairments, symptoms, medications, and their side effects. Tr. 2009.

11 - OPINION AND ORDER -

The ALJ rejected Dr. Scalapino's opinion, with the exception of a ten-pound limitation for lifting. Tr. 33-34. The ALJ provided two reasons for giving the opinion little weight. Tr. 33-34.

First, the ALJ found that Plaintiff's daily activities showed greater physical abilities than opined by Dr. Scalapino. Tr. 33. Specifically, the ALJ cited the fact that Plaintiff helped with the organization and labor for an elderly friend's move to a new apartment. Tr. 33. Plaintiff testified that he only participated in the organization for the move, but this testimony conflicts with a statement made by Plaintiff in March 2013, that he "moved heavy objects for neighbor." Tr. 115, 1752. Further, the ALJ noted Plaintiff's cooking, travel, and other activities as part of supplying medical marijuana dispensaries conflicted with Dr. Scalapino's assessment. Tr. 33. An ALJ's finding that a doctor's opinion is inconsistent with the claimant's admitted daily activities is a specific and legitimate reason for rejecting the opinion. *Tommasetti*, 533 F.3d at 1041.

Second, the ALJ found that Plaintiff showed no deficiencies in concentration, persistence, and pace during a consultative examination with Ronald Duvall, Ph.D., that took place less than two months prior to Dr. Scalapino's evaluation. Tr. 33-34. After a mental status examination, Dr. Duvall determined that Plaintiff was able to concentrate adequately on work tasks, persist in the task to completion, and pace himself through a full work day. Tr. 1416. This is a legally sufficient reason for rejecting Dr. Scalapino's opinion. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (stating that "where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is solely in the province of the ALJ to resolve the conflict") (citation omitted).

B.   **John Ellison, M.D.**

On August 27, 2013, John Ellison, M.D., performed a consultative examination and opined that Plaintiff could lift twenty pounds occasionally and 10 frequently; carry ten pounds occasionally; sit without limitations; stand for one hour out of eight; walk for one hour out of eight; required a cane to ambulate; could occasionally stoop but could otherwise never engage in postural movements; and could never work at unprotected heights, with moving mechanical parts, or in extreme temperatures. Tr. 1406-09. The ALJ gave only some weight to Dr. Ellison's opinion. Tr. 34.

Citing Plaintiff's daily activities such as running a business, cooking, and helping a neighbor move, the ALJ found that the prohibition on all postural movement besides stooping lacks support in the record. Tr. 34. Similarly, the ALJ found the environment restrictions on exposure to cold, heat, dust, and vibration lacked support, and that objective evidence does not require the use of a cane when walking at all times. Tr. 34. Even assuming the ALJ erred in discounting Dr. Ellison's findings on postural or environment limitations, or on Plaintiff's need for a cane, any such error is harmless because these limitations do not affect the ALJ's RFC finding that Plaintiff could perform sedentary work. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error by the ALJ is harmless where the mistake is "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion").

C.   **Ronald Duvall, Ph.D.**

On September 13, 2013, Ronald Duvall, Ph.D., completed a medical source statement opining, *inter alia*, that Plaintiff has antisocial personality disorder, with moderate limitations in his ability to interact appropriately with the public, supervisors, and co-workers. Tr. 1418-1420. The ALJ noted that while significant weight was given to the remainder of Dr. Duvall's opinion, "the

restriction on social interaction with the public, supervisors, and co-workers receives less weight because the claimant has shown greater ability to handle social interaction." Tr. 23. The record includes evidence that Plaintiff started his own business, attended school, helped a marijuana dispensary by making cookies for and working at a bake sale, helped a neighbor move, and worked at a recovery house. Tr. 26, 99, 115, 1412, 1413, 1752. Moreover, Plaintiff lived with his long-time partner, and spent time on his computer playing online games with others. Tr. 26, 102, 1413. Dr. Duvall himself observed that Plaintiff was talkative and pleasant throughout the evaluation. Tr. 1412. Accordingly, the ALJ reasonably rejected Dr. Duvall's opinion on Plaintiff's ability to interact with the public.

## IV. Step Two Analysis

Plaintiff also claims the ALJ erred at step two, arguing that he should have included a number of other physical and mental impairments among Plaintiff's severe impairments. At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *Yuckert*, 482 U.S. at 145; 20 C.F.R. § 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85-28).

"[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153–54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id.* A diagnosis alone is not sufficient to

establish a severe impairment. Instead, a claimant must show that his medically determinable impairments are severe. 20 C.F.R. § 416.920(c).

Plaintiff contends substantial medical evidence in the record shows imaging, diagnoses, medical visits, serious symptoms, and treatment related to plantar fasciitis, inflammatory arthritis/osteoarthritis/psoriatic arthritis, and calcific tendonitis resulting in limited ambulation; and obstructive sleep apnea and insomnia, resulting in fatigue and irregular sleep schedule. Plaintiff does not, however, cite to any records showing that these conditions caused more than "a slight abnormality having more than a minimal" impact on his ability to work. *Smolen*, 80 F.3d 1273. More important, however, any error in failing to include these physical limitations at step two is harmless, as the ALJ found other severe impairments and considered functional limitations arising from all of Plaintiff's physical impairments when assessing Plaintiff's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 910 (9th Cir. 2007) (holding that failure to consider an impairment at step two is harmless error where the ALJ includes limitations arising from that impairment in determining the claimant's RFC).

Plaintiff also contends the ALJ erred at step two in failing to include Plaintiff's mental impairments of depression and antisocial personality disorder. Upon identification of a colorable claim of mental impairment, an ALJ must apply a "special technique[.]" 20 C.F.R. § 416.920a(a); *Keyser v. Comm'r, Soc. Sec. Admin.*, 648 F.3d 721, 725–26 (9th Cir. 2011). An ALJ's decision must include a specific finding as to the degree of mental limitation in each of four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation. 20 C.F.R. § 416.920a(c) & (e).

At step two, the ALJ correctly applied the special technique, discussing how the Plaintiff's medically determinable depression, antisocial personality disorder, obsessive compulsive disorder, and history of intravenous use of methamphetamine caused no restrictions in his activities of daily living. Tr. 26-27. The ALJ found Plaintiff has mild limitation in the functional areas of daily living and social functioning, no restrictions in concentration, persistence, and pace caused by mental impairments, and no episodes of decompensation. Tr. 26.

The ALJ concluded that, "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere" pursuant to 20 C.F.R. § 416.920a(d)(1). Tr. 27. This finding is supported by substantial evidence in the record, and the ALJ did not err in omitting Plaintiff's medically determinable mental impairments as severe impairments at step two.

## V.    Step Four Analysis

Finally, Plaintiff claims the ALJ erred at step four in finding that Plaintiff could return to his past relevant work as a social service aide. At Step Four, "the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'" *Carmickle*, 533 F.3d at 1166 (quoting *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002)). Under the "actual performance" test, a claimant is capable of performing past work and therefore is not disabled if "the evidence shows that a claimant retains the [capacity] to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it[.]" SSR 82-61, *available at* 1982 WL 31387, at *2.

Plaintiff contends the ALJ presented an incomplete hypothetical to the VE in that it neglected to include the impact of the limitations noted by Drs. Scalapino, Ellison, and Duvall. As discussed above, however, the ALJ appropriately rejected the relevant limitations opined by these doctors.

Plaintiff also contends the ALJ erred in finding Plaintiff could perform past relevant work as a social service aide because the ALJ relied on an inaccurate determination by the VE that, as performed by Plaintiff, the position was sedentary. At the hearing, the VE testified that although social service aide is classified in the DOT as "light duty," Plaintiff performed the job at the sedentary level based upon Plaintiff's description of the job in the record. Tr. 118.

In his work history report, Plaintiff described his prior job as follows: "sit at a desk and monitor the general going on in a 40-bed drug treatment center," which included keeping track of the location of the residents and answering telephones. Tr. 345. That some walking may have been involved does not mean it was unreasonable for the VE to interpret Plaintiff's prior work as sedentary, as sedentary work can involve standing and/or walking up to two hours a day. SSR 83-10, *available at* 1983 WL 31251, at *5. Given the evidence before the VE, it was not unreasonable for the VE to conclude Plaintiff could perform past relevant work as actually performed, and the ALJ did not err in adopting this conclusion.

Finally, Plaintiff argues that to the extent the ALJ found him limited to sedentary work, he should be found disabled under Medical-Vocational Guideline (Grid) 201.14 at least as of his 50th birthday based upon VE testimony from a prior hearing that Plaintiff does not have any transferrable skills. As the Commissioner correctly points out, however, at the prior hearing the hypothetical limited Plaintiff to only occasional contact with the public and the VE testified that skills would not transfer because social service jobs were "all fairly people intensive." Tr. 89. In the second hearing

17 - OPINION AND ORDER -

there was no such restriction on working with public and no testimony on transferrable skills. As such, Plaintiff is incorrect that he would be found disabled under the Grid.

For these reasons, the ALJ did not err in concluding at step four that Plaintiff could perform the past relevant work of social service aide. Accordingly, the ALJ did not err in finding Plaintiff is not disabled.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision denying benefits to Plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this _8_ day of March, 2016.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge